UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOR ONLINE PUBLICATION ONLY

-----------------------------------------------------------------x
:
SOPHIA CHINEMEREM IHUOMA EZE, :
:
                Plaintiff, :   MEMORANDUM AND ORDER
:
      - against - :   11-CV-2454 (JG) (CLP)
:
THE CITY UNIVERSITY OF NEW YORK AT :
BROOKLYN COLLEGE, KAREN LEE GOULD, :
as President of THE CITY UNIVERSITY OF NEW :
YORK AT BROOKLYN COLLEGE, MILGA :
MORALES, as Dean of Student Affairs of :
BROOKLYN COLLEGE, BROOKLYN COLLEGE :
CAMPUS AND COMMUNITY SAFETY :
SERVICES (BCCSS), DONALD WENZ, Director, :
URSULA G. CHASE, Deputy Director, HARRY :
GOMEZ, Lieutenant, CYNTHIA HUNTER, :
Lieutenant, ROBERT SCOTT, Liaison :
Officer/Coordinator of Honors Academy, JAIME :
WEISS, Advisor, SALLY ROBLES, Assistant :
Professor, "JOHN DOE" SECURITY OFFICERS :
NOS.: 1-4 and "JANE DOE" SECURITY OFFICERS :
NOS.: 1-4, whose names are unknown to Plaintiff, :
:
                Defendants. :
-----------------------------------------------------------------x

A P P E A R A N C E S :

       LAW OFFICES OF ANDREW J. SPINNELL, LLC
            286 Madison Avenue, Suite 2100
            New York, New York 10017
    By:    Andrew J. Spinnell
           Andrei A. Popescu
           *Attorneys for Plaintiff*

       ERIC T. SCHNEIDERMAN
            Attorney General of the State of New York
            120 Broadway, 24th Floor
            New York, New York 10271
    By:    Steven L. Banks
           *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

Plaintiff Sophia Chinemerem Ihuoma Eze brings this action against the City University of New York at Brooklyn College ("Brooklyn College"), Brooklyn College Campus and Community Safety Services ("BCCCSS") and various employees of those entities (the "Individual Defendants").[1] Eze seeks damages and attorney's fees under 42 U.S.C. § 1983 and state law arising from her detention at BCCCSS's office and her subsequent involuntary commitment at a psychiatric hospital. The defendants have moved to dismiss Eze's amended complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons below, the motion is denied with respect to Eze's § 1983 claims against Scott and Robles arising from Eze's alleged detention and transport to the hospital. In all other respects, the motion is granted.

## BACKGROUND

A. *Factual Background*

In 2008, Eze was enrolled in Brooklyn College as an international honors student from Nigeria. Am. Compl. ¶ 20, ECF No. 17.[2] From October 2008 until mid-January 2009, she lived in an off-campus apartment in Brooklyn with roommates. *See id.* ¶¶ 23–24. She had found this apartment through a listing maintained by Brooklyn College. *Id.* ¶ 23.

On December 2, 2008, Eze went to the BCCCSS office to seek advice from security personnel regarding potential criminal activity at her apartment. *Id.* ¶ 24. She suspected that her roommates were defaming her on the internet and that her landlord had installed a

---

[1] The Individual Defendants are Karen Lee Gould, Milga Morales, Donald Wenz, Ursula G. Chase, Harry Gomez, Cynthia Hunter, Robert Scott, Jaime Weiss and Sally Robles. The amended complaint also asserts claims against several unidentified security officers, who are not currently parties to this action.

[2] The facts are drawn from the well-pleaded allegations in the amended complaint, which are assumed to be true for purposes of this motion.

hidden camera in her bedroom. *Id.* Her suspicion regarding the hidden camera was later confirmed. *Id.*

After Eze voiced her suspicions to a BCCCSS security officer, the officer directed her to prepare a report. *Id.* ¶¶ 25–26. The officer then summoned to the office Robert Scott, a liaison officer and coordinator of Brooklyn College's Honors Academy, and Sally Robles, an assistant professor and school psychologist. *See id.* ¶¶ 15, 17, 26.

Without any justification or provocation by Eze, Robles asked Eze a series of personal questions, including whether she had suffered from any mental illness, ever heard voices, and ever thought of suicide or hurting herself. *Id.* ¶ 27. Eze answered all of Robles's questions in the negative. *See id.* ¶ 28. Eze then explained to both Robles and Scott that she had come to BCCCSS's office merely to seek advice regarding the problems she was having with her roommates and landlord. *See id.* ¶ 29.

Robles called an ambulance with the intention of transporting Eze to Kings County Psychiatric Hospital ("KCPH"). *See id.* ¶ 30. Eze said that she did not need to go to a hospital and that she wanted to leave the premises immediately. *Id.* ¶ 31. Despite her further requests to leave, Scott, Robles and the security officer prevented her from leaving by physically blocking the door. *Id.* ¶¶ 32–33. They then forcibly led Eze into an ambulance "by surrounding her and forcing her against her will to walk to, and into, the ambulance." *Id.* ¶ 34; *see also id.* ¶ 35. Scott rode with Eze in the ambulance to KCPH. *Id.* ¶ 36. After arriving at KCPH, Eze was involuntarily committed and was released approximately two weeks later. *See id.* ¶¶ 36–37.

The two-week commitment prevented Eze from completing her final examinations. *See id.* ¶ 39. When Eze tried to complete her examinations in January 2009,

defendant Milga Morales, the dean of student affairs at Brooklyn College, prevented her from doing so "and thereby terminated [Eze's] enrollment at [Brooklyn College]." *Id.* ¶ 40.

B.   *Procedural Background*

Eze previously filed a lawsuit in state court against the City of New York and other defendants relating to her involuntary commitment. *See* Banks Decl. Ex. B, ECF No. 23-2. That suit was discontinued in 2010 pursuant to a stipulation by the parties, which the defendants suggest may have been in connection with a monetary settlement. *Id.* Ex. C, ECF No. 23-3; Defs. Mem. of Law 5, ECF No. 24. In 2011, Eze filed a separate lawsuit in state court against the defendants in the present action. On May 12, 2011, the state court dismissed that lawsuit without prejudice to commencement of an action in federal court. Banks Decl. Ex. H, ECF No. 23-8.

On May 20, 2011, Eze filed her complaint in this Court. I held a conference in connection with the defendants' anticipated motion to dismiss the initial complaint on August 5, 2011. During that conference, I granted Eze leave to file an amended complaint. Eze filed her amended complaint on September 9, 2011, and the defendants have moved to dismiss it.

DISCUSSION

A.   *Standard of Review*

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). Although a complaint need not contain detailed factual allegations, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a complaint containing only "'labels and conclusions,'" "'a formulaic recitation of the

4

elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

In considering a Rule 12(b)(6) motion to dismiss, a court should first identify any allegations in the complaint that "are no more than conclusions" and therefore "are not entitled to the assumption of truth." *Id.* at 1950; *see also Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). A court should assume that any remaining well-pleaded allegations are true "and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950; *see also Hayden*, 594 F.3d at 161; *Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55, 59 (2d Cir.), *cert. denied*, 131 S. Ct. 824 (2010). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

B.   *Analysis*

In her amended complaint, Eze asserts five claims: (1) a § 1983 claim against Scott, Robles, Brooklyn College, BCCCSS and several unidentified security officers; (2) a negligence claim against all defendants; (3) a negligent hiring and supervision claim against Brooklyn College, BCCCSS and several of the Individual Defendants; (4) a negligent infliction of emotional distress claim against Brooklyn College and several of the Individual Defendants; and (5) an intentional infliction of emotional distress claim against Brooklyn College and Morales.

Eze concedes that her claims against Brooklyn College, BCCCSS and any of the Individual Defendants in their official capacities are barred by the Eleventh Amendment.[3] *See* Pl. Mem. of Law 1, 7–8, ECF No. 27. She further concedes that her claim for intentional

---

[3]   Brooklyn College and BCCCSS are not "legally cognizable entit[ies] apart from" the City University of New York. *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 81 n.2 (2d Cir. 2004). Since the claims against these two defendants are dismissed, the distinction is immaterial.

5

infliction of emotional distress is barred by the applicable statute of limitations. *See id.* at 8.
Accordingly, the motion to dismiss is granted with respect to those claims. Her remaining claims are discussed below.

      1.    *The Section 1983 Claim*

Section 1983 provides a cause of action against any

> person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983. "To properly plead a claim under the statute, a 'plaintiff must allege that some person has deprived him of a federal right' and 'that the person who has deprived him of that right acted under color of state or territorial law.'" *Nesbitt v. Cnty. of Nassau*, No. 05-CV-5513 (JG), 2006 WL 3511377, at *2 (E.D.N.Y. Dec. 6, 2006) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

The defendants do not dispute that they were acting under color of state law, but argue that Eze has not properly pleaded the deprivation of any federal right. In opposing the motion to dismiss, Eze argues that she properly pleaded violations of her Fourth and Fourteenth Amendment rights.[4] She claims that these rights were violated when she was (1) forcibly

---

[4] The Amended Complaint asserts violations of Eze's rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution as well as her rights "under the laws and Constitution of the State of New York." Am. Compl. ¶ 1. I agree with the defendants that Eze cannot premise her § 1983 claim on any violation of her rights under New York law. *See, e.g.*, *Cutler v. City of New York*, No. 09 Civ. 5335 (PKC), 2010 WL 3469474, at *5 (S.D.N.Y. Aug. 16, 2010). I also agree with the defendants that the allegations in the Amended Complaint do not implicate Eze's Fifth, Sixth or Eighth Amendment rights. Robles's questioning of Eze did not implicate the Fifth Amendment privilege against self-incrimination because her statements were never used against her in a criminal proceeding. *See Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (plurality opinion); *id.* at 778–79 (Souter, J., concurring in the judgment); *see also Higazy v. Templeton*, 505 F.3d 161, 171–72 (2d Cir. 2007). Similarly, the protections of the Sixth Amendment apply only in criminal prosecutions, *see, e.g.*, *Fisk v. Letterman*, 501 F. Supp. 2d 505, 521 (S.D.N.Y. 2007), and the Eighth Amendment applies only to punishments imposed in connection with a criminal conviction, *see, e.g.*, *Vallen v. Carrol*, No. 02 Civ. 5666 (PKC), 2005 WL 2296620, at *9 (S.D.N.Y. Sept. 20, 2005). Accordingly, Eze's § 1983 claim is dismissed to the extent it is premised on violations

detained at the BCCCSS office and forcibly transported to KCPH; and (2) involuntarily committed after her arrival at KCPH.

A § 1983 claim arising from involuntary civil commitment may be analyzed under the Fourteenth Amendment's Due Process Clause or the Fourth Amendment's prohibition of unreasonable seizures. *See Rodriguez v. City of New York*, 72 F.3d 1051, 1061–62 (2d Cir. 1995) (assessing whether involuntary commitment violated due process); *Glass v. Mayas*, 984 F.2d 55, 57–58 (2d Cir. 1993) (assessing whether involuntary commitment violated either due process or the Fourth Amendment); *see also, e.g.*, *Jelich v. Hogan*, No. 09-CV-3278 (BMC) 2009 WL 3497495, at *2 (E.D.N.Y. Oct. 27, 2009) ("Involuntary commitment raises two potential constitutional issues: the Fourth Amendment right against unreasonable search and seizure and the right to due process under the Fourteenth Amendment." (citations omitted)). The act of transporting someone to a hospital against her will to be committed, as distinct from the commitment itself, is properly analyzed only as a Fourth Amendment violation. *See Green v. City of New York*, 465 F.3d 65, 85 (2d Cir. 2006) (affirming dismissal of Fourteenth Amendment claim arising from transport to a hospital for unwanted medical treatment because "this action is more properly considered as a seizure under the rubric of the Fourth Amendment").

Since the pre-hospitalization detention and transport of Eze to KCPH and her subsequent involuntary commitment there involve different legal and factual issues, I will address them in turn.

    a.  *Detention at BCCCSS and Transport to KCPH*

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend IV. A "seizure" for Fourth Amendment purposes occurs "when government actors

---

of her rights under New York law or the Fifth, Sixth or Eighth Amendments. Eze's counsel conceded the foregoing at oral argument.

have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'" *Glass*, 984 F.2d at 58 (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968))) (other internal quotation marks omitted) (alteration in original); *see also Green*, 465 F.3d at 83. The Supreme Court has held that "the protection against unreasonable searches and seizures fully applies in the civil context." *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 67 n.11 (1992); *see also Glass*, 984 F.2d at 58 ("That [the plaintiff's] seizure occurred in the civil context does not render the Fourth Amendment inapplicable.").

As noted above, the Second Circuit held in *Green* that the forcible transport of a person to a hospital may violate the Fourth Amendment. *See Green*, 465 F.3d at 83–85. Nevertheless, the defendants argue that the Fourth Amendment does not apply in this case because it does not involve "an arrest or other detention by a police officer." Defs. Mem. of Law 14.

The protections of the Fourth Amendment do not turn on whether or not a search or seizure is conducted by law enforcement personnel or some other state actor. The Supreme Court expressly rejected the defendants' arguments in *New Jersey v. T.L.O*, 469 U.S. 325 (1985), in holding that the Fourth Amendment applies to public school officials:

> [T]his Court has never limited the Amendment's prohibition on unreasonable searches and seizures to operations conducted by the police. Rather, the Court has long spoken of the Fourth Amendment's strictures as restraints imposed upon governmental action – that is, upon the activities of sovereign authority. Accordingly, we have held the Fourth Amendment applicable to the activities of civil as well as criminal authorities: building inspectors, Occupational Safety and Health Act inspectors, and even firemen entering privately owned premises to battle a fire, are all subject to the restraints imposed by the Fourth Amendment.

*Id.* at 335 (internal quotation marks and citations omitted); *see also Safford Unified Sch. Dist. No. 1 v. Redding*, 129 S. Ct. 2633, 2639, 2644 (2009) (search conducted by public school officials violated the Fourth Amendment); *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 617 (1989) (urine testing of railroad employees constitutes a search for Fourth Amendment purposes); *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987) (plurality opinion) ("Searches and seizures by government employers or supervisors of the private property of their employees . . . are subject to the restraints of the Fourth Amendment."); *see also id.* at 731 (Scalia, J., concurring in the judgment); *id.* at 732–33 (Blackmun, J., dissenting).

Moreover, the Fourth Amendment has been applied to the actions of non-law enforcement personnel in the very context of forcible transport to a hospital. Although *Green* involved a forcible-transport Fourth Amendment claim against a police officer, *Glass* did not. The Second Circuit held that the plaintiff had been seized when members of a state hospital's "Crisis Team took [him] to the hospital against his will, and he was involuntarily confined there pursuant to state law." *Glass*, 984 F.2d at 58. The defendants in *Glass* included a doctor and a nurse who had transported the plaintiff to a psychiatric facility. *See id.* at 56. The court explained that "[t]his infringement of his liberty was tantamount to the infringement of being arrested." *Id.* at 58. Although the Fourth Amendment claim was dismissed on qualified immunity grounds,[5] the court recognized that the conduct at issue implicated the Fourth Amendment. *See id.*

---

[5] Qualified immunity is available in this setting where the detention and forcible transport of the plaintiff was objectively reasonable under the circumstances. Neither Scott nor Robles has argued that qualified immunity bars Eze's claims, and such an argument would be premature because it would require consideration of facts (*i.e.*, their version of events leading up to the seizure) that may not properly be considered on a motion to dismiss. I note that the issue was addressed in *Glass* on a motion for summary judgment, and if the defense is raised here it will be appropriately addressed when the case is at that stage, following discovery.

Eze's allegations are similar to those in *Glass*. As in *Glass*, Eze claims that civilian government employees forcibly held and transported her to a hospital where she was then involuntarily committed. Thus, the conduct alleged in the Amended Complaint squarely implicates the Fourth Amendment even though it does not involve an arrest or similar detention by the police.

I also conclude that Eze has sufficiently alleged that Scott and Robles violated her Fourth Amendment rights. Under the Fourth Amendment, "a competent adult [can]not be seized and transported for [medical] treatment unless she present[s] a danger to herself or others." *Green*, 465 F.3d at 83; *see also Anthony v. City of New York*, 339 F.3d 129, 137 (2d Cir. 2003). Assuming, as I must at this stage, that the well-pleaded allegations in the amended complaint are true, Scott's and Robles's seizure of Eze was unreasonable. *See Cortlandt v. Westchester Cnty.*, No. 07 Civ. 1783 (MDF), 2007 WL 3238674, at *5 (S.D.N.Y. Oct. 31, 2007). As alleged, Eze had come to the BCCCSS office for advice regarding legitimate problems with her roommates and landlord. *See* Am. Compl. ¶ 24. When asked questions bearing on her mental health, Eze's answers were entirely normal. *See id.* ¶¶ 27–28. On these facts, there was nothing to suggest that Eze was a danger to herself or others. Accordingly, Eze has properly pleaded a § 1983 claim against Scott and Robles arising from their conduct in detaining her at the BCCCSS office and forcing her into an ambulance to be transported to KCPH.

      b.    *Involuntary Commitment*

Scott and Robles argue that they cannot be liable for Eze's involuntary commitment because they were not personally involved in the decision to commit her. They point to the fact that a person may not be involuntarily committed under New York law unless there has been an initial examination by a staff physician followed by a second examination by a

different staff physician within 48 hours. *See* N.Y. Mental Hyg. Law § 9.39(a). They further argue that "[t]his procedure appears to have been followed in Plaintiff's case, as she alleges in the complaint she filed [in state court] against the City of New York that she was separately evaluated by two physicians at [KCPH], first when she arrived and then again the following day." Defs. Mem. of Law 12.

I need not decide whether I may consider the truth of the matters alleged in Eze's state court complaint in reviewing the motion to dismiss. Even limiting my review to the four corners of the amended complaint filed in this action, the allegations do not plausibly support a claim that either Scott or Robles was personally responsible for Eze's two-week involuntary commitment.

"A § 1983 action, like its state tort analogs, employs the principle of proximate causation." *Townes v. City of New York*, 176 F.3d 138, 146 (2d Cir. 1999). While Eze has alleged that Scott's and Robles's conduct was a "but for" cause of her involuntary commitment, there is a dearth of allegations regarding proximate cause. The conclusory allegation that the defendants' conduct "was the proximate cause" of her commitment, Am. Compl. ¶ 37, is insufficient.

The amended complaint is silent as to what happened after Eze arrived at KCPH and, more importantly, it is silent as to what any of the defendants did that might have caused KCPH to hospitalize her for two weeks. While it is possible that Scott or Robles played some role in the decision to hospitalize Eze, it is at least as likely that "the intervening exercise of independent judgment" by KCPH staff was a "superseding cause" that destroyed any proximity between Scott's and Robles's conduct and Eze's hospitalization. *Townes*, 176 F.3d at 147. Thus, the amended complaint has alleged facts that are, at best "merely consistent with" the

11

defendants' liability. *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S at 557) (internal quotation marks omitted). Since the amended complaint does not suggest "more than a sheer possibility that" Scott and Robles caused Eze to be committed, it has not satisfied the plausibility standard of *Iqbal* and *Twombly*. *Id.*

      2.    *The Negligence Claims*

Eze has also asserted state law claims for negligence, negligent hiring and supervision, and negligent infliction of emotional distress.

With respect to the Individual Defendants other than Scott or Robles, the claims are premised solely on their positions at Brooklyn College and a series of entirely conclusory allegations. For example, the amended complaint alleges that they "negligently and grossly negligently failed and refused to follow proper procedures," Am. Compl. ¶¶ 65, 76, and that they "grossly negligently failed to properly supervise," *id.* ¶¶ 70–71. Disregarding these conclusory allegations, there is nothing left in the amended complaint that could establish a plausible claim against these defendants.

Eze also asserts a negligence claim against Scott and Robles. As discussed above, Eze has sufficiently alleged a § 1983 claim against these defendants based on their *intentional* conduct of restraining her and transporting her to KCPH. While a plaintiff is generally permitted to plead inconsistent theories of liability in the alternative, *see* Fed. R. Civ. P. 8(d)(2), the allegations in the amended complaint are only consistent with a theory of intentional, or perhaps reckless, conduct. Accordingly, the negligence claims against Scott and Robles should be dismissed. *See Vilkhu v. City of New York*, No. 06-CV-2095 (CPS) (JO), 2008 WL 1991099, at *9 (E.D.N.Y. May 5, 2008) ("The question is not of alternative pleadings arising out of the same conduct, but of a single set of facts which if proved can only provide the basis for one or more

intentional torts (which themselves may be alleged alternatively)."); *Dineen ex rel. Dineen v. Stramka*, 228 F. Supp. 2d 447, 454 (S.D.N.Y. 2002) ("Since plaintiff's claims against defendant are premised on intentional conduct, [the] claim for negligence must be dismissed."); *see also Busch v. City of New York*, No. 00-CV-5211 (SJ), 2003 WL 22171896, at *7 (E.D.N.Y. Sept. 11, 2003).

## CONCLUSION

For the reasons stated above, the motion to dismiss is denied with respect to Eze's § 1983 claim against Scott and Robles arising from her alleged detention and transport to KCPH. In all other respects, the motion is granted.

So ordered.

John Gleeson, U.S.D.J.

Dated: December 27, 2011
 Brooklyn, New York